# In the United States Court of Federal Claims

No. 08-610C
(Filed: January 10, 2012)

| | |
|---|---|
| TEXTAINER EQUIPMENT MANAGEMENT LIMITED, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | **Motion to Amend Complaint; RCFC 15(a); Subcontractor Rights to Payment; Assignment of Contract; Third Party Beneficiary; Anti-Assignment Act** |

*Lars H. Liebeler*, Washington, DC, for plaintiffs.

*Robert C. Bigler*, United States Department of Justice, Washington, DC, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Brian M. Simkin*, Assistant Director, for defendant.

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT

**FIRESTONE**, *Judge*.

Pending before the court is the motion of CAI International, Inc. ("CAI"), Cronos Containers Limited ("Cronos"), and Textainer Equipment Management Limited ("Textainer"), successor in interest to Capital Lease Limited ("Capital") (collectively, "plaintiffs") to amend their complaint. Plaintiffs each own and/or manage a large fleet of

intermodal shipping containers, which plaintiffs leased to a third party company,

TOPtainer Container Management & Sales ("TOPtainer").  TOPtainer, in turn, leased

plaintiffs' containers to the Army pursuant to a lease agreement ("Master Lease")

between TOPtainer and defendant the United States ("the government").  The containers

were leased by the government for use in Iraq, Kuwait, and Afghanistan.  Plaintiffs were

not parties to the Master Lease agreement.

   Under the terms of the Master Lease, the government was allowed to buy any

containers that were "lost" at the end of the lease term.  Pursuant to this authority, the

government paid TOPtainer for approximately 1000 containers that the government could

not find after the lease between TOPtainer and the Army expired.  Although the

government paid TOPtainer for these "lost" containers, TOPtainer never paid plaintiffs.

TOPtainer is no longer in existence and cannot be found.

   Plaintiffs filed their original complaint in this court on September 2, 2008, alleging

that the government had taken their property, i.e. their containers, without just

compensation in violation of the Fifth Amendment of the Constitution of the United

States.  Plaintiffs moved for summary judgment on their claim.  On June 17, 2011, the

court denied plaintiffs' motion.  The court determined that genuine issues of material fact

precluded summary judgment on plaintiffs' taking claim, finding that there were disputed

issues of fact regarding whether the government was acting in its sovereign capacity

when it assumed ownership of plaintiffs' containers under the terms of the buyout

provisions in the Master Lease.  The court agreed with the government that if the facts

establish that the government was acting in its proprietary capacity rather than in its

sovereign capacity when it assumed ownership of the containers, the government cannot be liable for a taking.  Rather, plaintiffs will be left with only contract remedies, if any. Following the summary judgment ruling, plaintiffs filed the pending motion seeking leave to amend their complaint to include two contract claims against the government. For the reasons set forth below, plaintiffs' motion for leave to amend their complaint is **DENIED**.

## I.    BACKGROUND

Many of the background facts are set forth in the court's June 7, 2011, opinion on summary judgment and will not be repeated here.  See Textainer Equip. Mgmt. Ltd. v. United States, 99 Fed. Cl. 211 (2011).  The facts relevant to plaintiffs' proposed contract claims are taken from plaintiffs' proposed First Amended Complaint unless otherwise indicated.

Plaintiffs leased their containers to TOPtainer on the following dates:  Capital entered into a lease with TOPtainer on or about March 1, 1999, CAI on or about November 4, 2002, and Cronos on or about September 17, 2003.  Thereafter, TOPtainer leased plaintiffs' containers to the Army.  In the spring of 2004, TOPtainer stopped making payments to plaintiffs under their respective leases, placing TOPtainer in default of those leases.  On August 4, 2004, one of the plaintiffs, Capital, sent an email to one of the government's contracting officials, Leonard Priber, to inform him that TOPtainer was in default of its lease with Capital, and that TOPtainer had no further rights to possess any containers under the Capital/TOPtainer lease.  Mr. Priber responded, informing Capital that he could not recognize the notice of default, and that Capital should contact

legal counsel with the United States Surface Deployment and Distribution Command

("SDDC").   The next day, Capital contacted SDDC, which, on August 13, 2004, rejected

Capital's notification that TOPtainer was in default.

Meanwhile, on July 1, 2004, the 1997 Master Lease between TOPtainer and the

Army expired.  Textainer, 99 Fed. Cl. at 215.  Pursuant to the Master Lease agreement,

the Army notified TOPtainer that it could not locate certain containers that it had leased

from TOPtainer, and that it would instead conduct a buyout of the containers in

accordance with clause H-7 of the Master Lease.  Under that provision, the government

was to pay TOPtainer for any lost containers in accordance with a schedule set in the

Master Lease.  Textainer, 99 Fed. Cl. at 214-15.  During late 2004 and 2005, TOPtainer

submitted invoices to the Army, and the Army paid the invoices directly to TOPtainer.

The buyout involved approximately 477 containers leased by Capital/Textainer, 435

leased by CAI, and 103 leased by Cronos.

Each contract between plaintiffs and TOPtainer expressly prohibited the sale or

transfer of containers to any third party.[1]  The United States did not request or obtain

plaintiffs' consent for the buyout.  The government also rejected various requests from

CAI and Capital/Textainer that the government make payments directly to those

plaintiffs.  TOPtainer never paid plaintiffs for the containers.

---

[1] As discussed in the opinion on summary judgment, each of plaintiffs' contracts with TOPtainer also contained a provision regarding "lost" containers.  These provisions required TOPtainer to pay plaintiffs in the event containers were lost and could not be found.  Textainer, 99 Fed. Cl. at 213-14, 218-19.

On January 8, 2007, plaintiffs filed a contract claim for compensation with the contracting officer at the SDDC under FAR § 33.206.  On March 14, 2007, the SDDC denied plaintiffs' demand for compensation.  On September 2, 2008, plaintiffs filed their initial complaint in this court alleging a taking of their property without just compensation in violation of the Fifth Amendment of the Constitution of the United States.  They did not allege any contract claims in their original complaint.  Plaintiffs filed the pending motion for leave to amend their complaint following the court's denial of their motion for summary judgment.  Plaintiffs allege in Count II of the amended complaint that they were assigned the Master Lease between the government and TOPtainer "by operation of law" and that the government breached its assigned agreement with plaintiffs when it paid TOPtainer, instead of plaintiffs, for the unreturned containers.  In Count III of the amended complaint, plaintiffs allege that they were third party beneficiaries of the Master Lease agreement between TOPtainer and the government, and that the government breached its obligations to them by failing to ensure that the buyout payments made to TOPtainer were forwarded to plaintiffs.

## II.     STANDARD OF REVIEW

Rule 15(a) of the Rules of the United States Court of Federal Claims ("RCFC") govern when and how a party may amend its pleadings.  Where, as here, the party seeking to amend must first obtain permission from the court, Rule 15(a)(2) applies.

The decision to grant leave to amend is within the discretion of the trial court. Tamerlane, Ltd. v. United States, 550 F.3d 1135, 1146-47 (Fed. Cir. 2008).  Motions to amend should as a general matter, be granted freely.  Spalding & Son, Inc. v. United

States, 22 Cl. Ct. 678, 680 (1991); Foman v. Davis, 371 U.S. 178, 182 (1962) (finding

that so long as "the underlying facts or circumstances relied upon by a plaintiff may be a

proper subject of relief, he ought to be afforded an opportunity to test his claim on the

merits").  However, the court may deny such motions in cases where there has been

"undue delay that would prejudice the nonmoving party, [a finding] that the moving party

has acted in bad faith, or [a finding] that the amendment would be futile."  Kemin Foods,

L.C. v. Pigmentos Vegetales Del Centra S.A. de C.V., 464 F.3d 1339, 1353 (Fed. Cir.

2006) (discussing analogous Federal Rule of Civil Procedure); see also Foman, 371 U.S.

at 182; Herndon v. United States, 36 Fed. Cl. 198, 202-03 (1996), aff'd, 121 F.3d 727

(Fed. Cir. 1997) (table).  "The existence of any one of these criteria is sufficient to deny a

motion to amend, the theory being that the amendment would not be necessary to serve

the interests of justice under such circumstances." Spalding, 22 Cl. Ct. at 680.

    The government opposes plaintiffs' motion to amend their complaint primarily on

the grounds of undue delay in asserting the contract claims and futility.  A futility

objection may be based on jurisdictional grounds, requiring a finding that plaintiffs'

proposed amendments would not withstand a motion to dismiss based on lack of subject

matter jurisdiction under RCFC 12(b)(1), or that plaintiffs fail to sufficiently allege

privity of contract with the government and therefore lack standing.  See, e.g., Wolfchild

v. United States, Nos. 03-2684L, 01-568L, 2011 WL 3438414, at *20 (Fed. Cl. Aug. 18,

2011).  A motion to amend may also be deemed futile if it cannot withstand a motion to

dismiss for failure to state a claim:  "When a party faces the possibility of being denied

leave to amend on the ground of futility, that party must demonstrate that its pleading

states a claim upon which relief could be granted, and it must proffer sufficient facts

supporting the amended pleading that the claim could survive a dispositive pretrial

motion." Kemin Foods, 464 F.3d at 1355; see also Merck & Co., Inc. v. Apotex, Inc.,

287 F. App'x 884, 888 (Fed. Cir. 2008) (analyzing analogous Federal Rule of Civil

Procedure).  The court therefore discusses the standards attendant to dismissal for lack of

jurisdiction and for failure to state a claim below.

### A.    Dismissal for Lack of Standing or Subject Matter Jurisdiction

It is well-settled that the government may only be sued to the extent it consents to

be sued.  Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1263 (Fed. Cir. 2005) (citing

United States v. Lee, 106 U.S. 196, 207 (1882)).  With respect to contract cases, the

"government consents to be sued only by those with whom it has privity of contract."

Flexfab, 424 F.3d at 1263 (quoting Erickson Air Crane Co. v. United States, 731 F.2d

810, 813 (Fed. Cir. 1984)) (internal quotation omitted).  Therefore, unless an exception

applies, subcontractors, such as plaintiffs, lack privity and may not bring direct suits

against the government.  Flexfab, 424 F.3d at 1263.  "One such exception allows suit

against the government by an intended third party beneficiary despite the lack of privity."

Id. (citing First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279,

1289 (Fed. Cir. 1999)).  If third party beneficiary status can be shown, a subcontractor

will have standing to bring a suit against the government.  However, if a subcontractor

cannot establish that it was a third party beneficiary to the contract between the prime

contractor and the United States, the subcontractor will lack standing to bring suit.

Flexfab, 424 F.3d at 1259.

In addition to standing, a plaintiff also has the burden of establishing that the court has subject matter jurisdiction over a suit against the federal government.  United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003).  The Tucker Act serves as a waiver of sovereign immunity and grants this court jurisdiction over "any claim against the United States founded upon . . . any express or implied contract with the United States."  28 U.S.C. § 1491(a)(1) (2006).  However, the Tucker Act alone does not create a substantive cause of action, and the plaintiff must identify a separate source of substantive law that creates the right to money damages.  Blueport Co. v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008) (quoting Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008)).  "Allegations of a contract with the government and breach of that contract can suffice for this purpose, so long as monetary relief is sought."  Liberty Ammunition, Inc. v. United States, No. 11-84C, 2011 WL 5150221, at *3 (Fed. Cl. Oct. 31, 2011).

The Federal Circuit has made clear that, to establish subject matter jurisdiction for a contract claim under the Tucker Act, plaintiffs must provide "a non-frivolous allegation of a contract with the government."  Engage Learning, Inc. v. Salazar, 660 F.3d 1346, 1353 (Fed. Cir. 2011).  "The actual existence of a contract is not a jurisdictional matter but rather a decision on the merits of the case."  Liberty Ammunition, 2011 WL 5150221, at *4 (citing Engage Learning, 660 F.3d at 1354).  The existence of a contract is thus determined under RCFC 12(b)(6).  See Engage Learning, 660 F.3d at 1354 ("[W]hen the Court of Federal Claims determines that the plaintiff has failed as a matter of law to

establish the existence of an alleged contract with the government, the proper disposition

is to dismiss for failure to state a claim, rather than for lack of jurisdiction.").

### B.      Dismissal for Failure to State a Claim Under RCFC 12(b)(6)

To avoid dismissal for failure to state a claim upon which relief may be granted

under RCFC 12(b)(6), the complaint must contain facts sufficient to "'state a claim to

relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The plaintiff's factual

allegations must "raise a right to relief above the speculative level" and cross "the line

from conceivable to plausible."  Bell Atl. Corp., 550 U.S. at 555.  "A pleading that offers

'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action

will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

'further factual enhancement.'"  Iqbal, 129 S. Ct. at 1949 (quoting Bell Atl. Corp., 550

U.S. at 555, 557).  In considering a motion under RCFC 12(b)(6), "the court must accept

as true the complaint's undisputed factual allegations and should construe them in a light

most favorable to the plaintiff."  Cambridge v. United States, 558 F.3d 1331, 1335 (Fed.

Cir. 2009) (citing Papasan v. Allain, 478 U.S. 265, 283 (1986); Gould, Inc. v. United

States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).  "[T]he Court of Federal Claims has both

the power and the obligation to dismiss cases in which no claim has been properly

stated."  Brach v. United States, No. 2011-50889, 2011 WL 4821969, at *4 (Fed. Cir.

Oct. 12, 2011).

### III.    DISCUSSION

The government argues that plaintiffs' motion to amend their complaint to add assignment and third party beneficiary claims should be denied because plaintiffs waited too long to amend their complaint and because pursuit of the contract claims would be futile.  Specifically, as to the assignment claim, the government argues that plaintiffs have failed to allege sufficient facts to show that a valid assignment occurred.  Def.'s Resp. at 6 ("[P]laintiffs provide no support for the assignment other than to claim that TOPtainer's default on its contract with plaintiffs assigned TOPtainer's contract" with the government to plaintiffs.).  The government contends that plaintiffs' attempt to "stand in the shoes" of TOPtainer impermissibly "circumvent[s] the well-established rule that the Government is not liable to unpaid subcontractors" when the prime contractor has already been paid by the United States.  Id. at 5-6.  In regard to plaintiffs' third party beneficiary claim, the government argues that plaintiffs have not alleged sufficient facts to demonstrate that they have standing to sue the government because plaintiffs have not identified any facts to show an intent to benefit plaintiffs.  Id. at 7-8.  For these reasons, the government argues that the motion to amend the complaint should be denied.

Plaintiffs generally respond that the proposed assignment and third party beneficiary claims identified in the proposed amended complaint "are too complex in nature to resolve on a motion for leave to amend," and that under the liberal standard of RCFC 15(a)(2), their motion should be granted.  Pls.' Mot. at 2.  Plaintiffs contend that their First Amended Complaint presents allegations sufficient to withstand the above-noted jurisdictional and procedural arguments.  Plaintiffs also assert that their proposed

contract claims were not unduly delayed and that permitting the motion to amend would

not cause prejudice to the government. Id. at 4-5.

After careful consideration, the court agrees with the government that allowing

plaintiffs' assignment claim and plaintiffs' third party beneficiary claim would be futile. [2]

---

[2] To the extent that plaintiffs allege an "implied-in-fact" contract separate from their third party
beneficiary claim, see First Am. Compl. ¶ 71, the court also agrees with the government that
plaintiffs complaint does not sufficiently allege the elements of an implied-in-fact contract to
avoid dismissal under RCFC 12(b)(6), and is therefore futile. To establish the existence of an
implied-in-fact contract, plaintiffs must demonstrate: (1) mutual intent to contract; (2)
consideration; (3) lack of ambiguity in an offer and acceptance; and (4) actual authority on the
part of the government representative to bind the United States in contract. City of El Centro v.
United States, 992 F.2d 816, 820 (Fed. Cir. 1990) (citing Russell Corp. v. United States, 537
F.2d 474, 482 (Ct. Cl. 1976)).

An implied-in-fact contract with the government may not exist without evidence of a meeting of
the minds with the United States. Smith v. United States, 58 Fed. Cl. 374, 383 (2003), aff'd, 110
F. App'x 898 (Fed. Cir. 2004); AG Route Seven P'ship v. United States, 57 Fed. Cl. 521, 536-37
(2003) ("Acceptance of the offer must be manifested by conduct, which, reviewed objectively,
indicates assent to the proposed bargain."), aff'd, 104 F. App'x 184 (Fed. Cir. 2004). Here,
plaintiffs do not allege conduct by the United States that demonstrates a mutual intent to
contract. In fact, the First Amended Complaint reveals that the government refused to contract
with plaintiffs or to provide payment to any entity other than TOPtainer for plaintiffs' containers.
See First Am. Compl. ¶ 17 ("[Government contractor] Mr. Priber . . . did not agree to transfer the
management of Capital's containers under lease from TOPtainer to Textainer's management.");
id. ¶ 41 (describing the payment of funds to TOPtainer for the containers deemed "lost" by the
government). These facts stand in contrast to plaintiffs' allegation that the government displayed
"an intent that its payments [to TOPtainer] benefit the plaintiffs." Id. ¶ 71.

In addition, plaintiffs do not allege that a government representative with actual authority agreed
to bind the United States to a contract, a crucial element to an implied-in-fact contract claim.
See, e.g., Flexfab, 424 F.3d at 1260. For these reasons, to the extent that plaintiffs are alleging
an implied-in-fact contract, this claim is also futile. Furthermore, to the extent that plaintiffs are
alleging an implied-in-law contract, this court lacks jurisdiction to hear that claim. Trauma Serv.
Group v. United States, 104 F.3d 1321, 1324-25 (Fed. Cir. 1997).

The government also opposes plaintiffs' motion to amend, "even if plaintiffs were in privity of
contract with the United States," based on several allegedly unfulfilled procedural requirements
of the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 7101-09 (2006). The government argues
that the CDA applies "to the extent plaintiffs' allege [] an implied-in-fact contract" between
themselves and the government. Def.'s Resp. at 9-13. Because the court holds that plaintiffs do

Thus, for the reasons discussed in greater detail below, plaintiffs' motion for leave to amend their complaint is **DENIED**.

### A.   Plaintiffs' Assignment Claim is Futile

Plaintiffs first seek to add a breach of an assigned contract claim as Count II of their complaint.  Plaintiffs allege that they became assignees of the Master Lease between the government and TOPtainer by "operation of law" when TOPtainer defaulted under its contracts with each plaintiff.  <u>See</u> First Am. Compl. ¶ 61-63.  Plaintiffs argue that because the assignment was by "operation of law," they did not need government approval under the Anti-Assignment Act.  <u>See</u> 41 U.S.C § 15; 31 U.S.C. § 3727 (2006). They contend that they have stated a claim for relief based on the government's failure to pay them once the assignment by "operation of law" took effect following TOPtainer's default.

The court agrees with the government that allowing plaintiffs to file an amended complaint based on an assignment theory would be futile because plaintiffs have failed to sufficiently allege a valid assignment.  Plaintiffs do not point to any facts or law demonstrating that a default on the part of a prime contractor against a subcontractor gives rise to an "operation of law" assignment of a government contract to the subcontractor.  Instead, plaintiffs offer only conclusory allegations that, here, the assignment of the Master Lease to plaintiffs occurred by "operation of law."

---

not sufficiently allege an "implied-in-fact" contract with the United States, the court does not address this aspect of the government's argument.

In support of their claim, plaintiffs first allege that, when TOPtainer defaulted under its contracts with each plaintiff, TOPtainer had no further rights with respect to plaintiffs' containers under its Master Lease with the United States. First Am. Compl. ¶ 61. Plaintiffs next allege that the United States was informed of TOPtainer's default under TOPtainer's contracts with plaintiffs. Id. ¶ 62. Plaintiffs then summarily conclude that "by operation of law, Plaintiffs became assignees of TOPtainer under the Master Lease with the United States" after the default. Id. ¶ 63.

While TOPtainer may have defaulted on its contracts with plaintiffs, the court agrees with the government that this fact alone does not result in the assignment of the Master Lease. Plaintiffs' amended complaint does not identify any mechanism by which the Master Lease was assigned to plaintiffs. Plaintiffs do not allege that the government consented to the assignment of the Master Lease itself or its proceeds. In fact, plaintiffs concede that the government refused to transfer management of the containers from TOPtainer to Capital. See First Am. Compl. ¶ 17.

Furthermore, plaintiffs do not identify any authority which recognizes an "operation of law" assignment in these circumstances. Nor do plaintiffs allege any facts that would allow the court to analogize plaintiffs' case to any recognized "operation of law" transfer. Assignments by "operation of law" are involuntary transfers of government contracts that occur "without any act of the parties" and that are "compelled by law." United States v. Aetna Cas. & Sur. Co., 338 U.S. 366, 374 (1949) (quoting United States v. Gillis, 95 U.S. 407, 416 (1877)); see also Restatement (Second) of Contracts § 316(d) (1981). In the context of government contracts, assignments by

"operation of law" have been found in cases involving involuntary transfer by intestate succession or testamentary disposition, by judicial sale, by bankruptcy, by subrogation to an insurer, and by consolidation or merger to a successor of a claimant corporation. Tuftco Corp. v. United States, 614 F.2d 740, 745 (Fed. Cir. 1980); Liberty Ammunition, 2011 WL 5150221, at *7 (finding that alleged assignee might qualify for a recognized "operation of law" assignment and rejecting a motion to dismiss); Centers v. United States, 71 Fed. Cl. 529, 534-35 (2006) (citations omitted). The court declines plaintiffs' invitation to broadly extend this category by allowing an assignment of a government contract by "operation of law" to occur when a prime contractor defaults under a lease with a subcontractor. To do so would contravene the law of assignments of government contracts as established by the precedent of the Federal Circuit.

Ultimately, plaintiffs allege only that, because of TOPtainer's default under its contracts with plaintiffs, TOPtainer had no further legal rights to plaintiffs' containers. Without more, this fact is not enough to support the bald assertion of an assignment to plaintiffs by "operation of law." [3]   It is well-settled that "naked assertions" without "further factual enhancements" are not sufficient to withstand a motion to dismiss. See Bell Atl. Corp., 550 U.S. at 555-57; see also Iqbal, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Here, plaintiffs have not alleged sufficient facts to demonstrate that there

---

[3]  Plaintiffs concede that the First Amended Complaint would only "restate and expand on facts" that were already established in plaintiffs' motion for summary judgment. Pls.' Mot. at 2. Further proceedings would therefore not provide any additional facts that would allow plaintiffs to support their breach of contract claims.

had been an assignment of the Master Lease to plaintiffs.  TOPtainer's default by itself

was not enough to create an assignment of a government contract by "operation of law."

Therefore, the court finds that plaintiffs' assignment claim in Count II of the First

Amended Complaint does not set forth a valid assignment.[4]  As such, plaintiffs cannot

establish the existence of a contract that would allow them to withstand a 12(b)(6)

motion.  Accordingly, the court **DENIES** plaintiffs' request for leave to add Count II to

their original complaint on the grounds of futility.

### B.     Plaintiffs' Third Party Beneficiary Claim is Futile

Plaintiffs also seek leave to add a third party beneficiary claim to their complaint.

Plaintiffs assert that a "contract also arose between the United States and each Plaintiff

because each Plaintiff was a direct third party beneficiary of the original Master Lease

between the United States and TOPtainer."  First. Am. Compl. ¶ 73.  In support, plaintiffs

allege that "[a]t all relevant times the United States knew that each Plaintiff was an

intended third party beneficiary of the Master Lease between TOPtainer and the United

States."  Id. ¶ 74.  Plaintiffs claim that the United States breached this implied contract

"by failing and refusing to pay per diem rental charges to [Capital/Textainer] and to

adjust container losses and 'deemed' losses with all plaintiffs, and by failing to take

---

[4] Plaintiffs also suggest, relying on D & H Distributing Co. v. United States, 102 F.3d 542 (Fed.
Cir. 1996), that TOPtainer's default under its contract with plaintiffs resulted in an assignment of
proceeds of the Master Lease between the government and TOPtainer, and that, therefore, the
government should have paid plaintiffs' directly for their containers under the Master Lease.
Pls.' Reply at 6-7.  This claim would also be futile.  Plaintiffs do not allege that they received an
express assignment of proceeds from TOPtainer, or that they provided notice to the government
of such an assignment.  See Produce Factors Corp. v. United States, 467 F.2d 1343, 1348-49 (Ct.
Cl. 1972); Nelson Constr. Co. v. United States, 79 Fed. Cl. 81, 87-88 (2007).  In such
circumstances, plaintiffs cannot state a claim for payment.

commercially reasonable steps to insure that payments made to TOPtainer were conveyed to plaintiffs for the benefits received by the United States." Id. ¶ 75.

As noted above, generally, a subcontractor may not bring a direct breach of contract claim against the government because they lack privity of contract with the government. However, the Federal Circuit has recognized "limited exceptions to that general rule." Sullivan v. United States, 625 F.3d 1378, 1380 (Fed. Cir. 2010) (citing First Hartford, 194 F.3d at 1289). One such exception allows suit against the government by an "intended third party beneficiary" despite lack of privity. Flexfab, 424 F.3d at 1264 (citing First Hartford, 194 F.3d at 1289). Under the "intention to benefit" test, to establish third party beneficiary status, a plaintiff must show that the "contract . . . reflect[s] the express or implied intention of the [contracting] parties to benefit the third party." Montana v. United States, 124 F.3d 1269, 1273 (Fed. Cir. 1997). Without third party beneficiary status, a subcontractor lacks standing to sue the government directly. Flexfab, 424 F.3d at 1259.

In order to show intention to benefit, a third party beneficiary "need not be specifically or individually identified in the contract, but must fall within a class clearly intended to be benefited thereby." Id. at 1260 (quoting Montana v. United States, 124 F.3d 1269, 1273 (Fed. Cir. 1997). Additionally, the party asserting third party beneficiary status must "demonstrate that the contract not only reflects the express or implied intention to benefit the party, but that it reflects an intention to benefit the party directly." Glass v. United States, 258 F.3d 1349, 1354 (Fed. Cir. 2001); Flexfab, 424 F.3d at 1259. As a result, only direct or intended beneficiaries, established by the intent

of the contracting parties, may obtain third party beneficiary status.[5]  As the Federal

Circuit has explained:

> [F]or third party beneficiary status to lie, the contracting officer must be put
> on notice, by either the contract language or the attendant circumstances, of
> the relationship between the prime contractor and the third party
> subcontractor so that an intent to benefit the third party is fairly attributable
> to the contracting officer.

Flexfab, 424 F.3d at 1263.  The Federal Circuit has further held that "one way to

establish intent is to 'ask [. . .] whether the beneficiary would be reasonable in relying on

the promise as manifesting an intention to confer a right on him.'"  FloorPro, Inc. v.

United States, 98 Fed. Cl. 144, 148 (2011) (quoting Flexfab, 424 F.3d at 1260).

However, the Federal Circuit has also recognized that third party beneficiary status is an

"exceptional privilege" that "should not be granted liberally."  Flexfab, 424 F.3d at 1259

(citing German Alliance Ins. Co. v. Home Water Supply Co., 226 U.S. 220, 230 (1912)).

     The government argues that plaintiffs have not established the "exceptional

privilege" of third party beneficiary status in this case because they have failed to allege

any facts to support the "intention to benefit" standard outlined by the Federal Circuit.

Def.'s Resp. at 8.  Specifically, the government contends that plaintiffs have not and

cannot allege that anything in the 1997 Master Lease demonstrates an intent to benefit

plaintiffs, and that plaintiffs have not alleged any facts to show that the government's

contracting officer by word or deed manifested any intent to confer third party

beneficiary status on plaintiffs.  The court agrees.

---

[5] Intended beneficiaries stand in contrast to incidental beneficiaries:  "Performance of a contract
will often benefit a third person.  But unless the third person is an intended beneficiary . . . no
duty to him is created."  Restatement (Second) of Contracts § 302, cmt. e (1981).

In support of their third party beneficiary claim, plaintiffs allege that the government "knew that each plaintiff was an intended third party beneficiary of the Master Lease." First Am. Compl. ¶ 72. Yet this assertion, without more, is not sufficient to confer third party beneficiary status on plaintiffs, even at the pleadings stage. See Iqbal, 129 S. Ct. at 1949. Plaintiffs do not allege that the language in the Master Lease demonstrates the government's intent to benefit plaintiffs or a class of beneficiaries to which plaintiffs belong, as required under the "intention to benefit" test. Plaintiffs also do not allege any facts that demonstrate that a contracting officer intended to assume a contractual obligation to plaintiffs in the Master Lease. In short, the First Amended Complaint does not contain any facts that show plaintiffs were meant to directly benefit from the Master Lease.

Nor do plaintiffs allege any facts to show that, in their efforts to secure payment from the government, a government contracting official with authority to bind the United States indicated that plaintiffs were entitled to third party beneficiary status. While plaintiffs allege that government contracting personnel learned that plaintiffs and not TOPtainer owned the subject containers, this knowledge alone is not sufficient to demonstrate that the government intended to confer on plaintiffs any contractual right to payment under the Master Lease. To the contrary, the government expressly rebuffed Capital's request for payment and rejected Capital's notification of TOPtainer's default. First Am. Compl. ¶ 17, 21.

At best, plaintiffs have alleged that they had hoped to benefit from TOPtainer receiving funds from the government. This is an incidental, not a direct, benefit. As

incidental beneficiaries, plaintiffs cannot obtain third party beneficiary status.  See Restatement (Second) of Contracts § 302 (1981); Carter v. United States, No. 10-048C, 2011 WL 5998867, at *9 (Fed. Cl. Nov. 30, 2011) ("[I]t is not enough that plaintiff would have ultimately benefited from the agreement—i.e., because it was merely an incidental beneficiary—rather, the federal and state governments must have intended the third-party to receive the promised performance.").  Having failed to allege sufficient facts to demonstrate third party beneficiary status, plaintiffs lack standing to bring their claim directly against the government.[6]  Accordingly, the court **DENIES** as futile plaintiffs motion to amend the complaint to include the third party beneficiary claim of Count III.[7]

## IV.   CONCLUSION

For the foregoing reasons, plaintiffs' motion to amend the complaint is **DENIED**. The parties shall file a joint status report by **January 20, 2012**, indicating which dates the parties are available for pre-trial conference and trial within the following weeks:

| | |
|---|---|
| **Pre-Trial Conference:** | February 20, 2012 – March 2, 2012 |
| **Trial:** | March 12, 2012 – March 17, 2012 |
| | March 19, 2012 – March 24, 2012 |

---

[6] To the extent that plaintiffs argue under D & H Distributing Co. v. United States that "a complete or partial assignment of the right to be paid the proceeds of a contract" can also be construed as a third party beneficiary claim, 102 F.3d at 547; see Pls.' Reply at 6-7, this argument fails because plaintiffs have not sufficiently alleged a valid assignment.  See note 4, supra, and accompanying text.

[7] Because the court denies the entirety of plaintiffs' motion to amend on futility grounds, it does not reach the parties' arguments concerning undue delay.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge