# In the United States Court of Federal Claims

No. 08-610C
(Filed: April 25, 2017)

|  |  |  |
|---|---|---|
| TEXTAINER EQUIPMENT MANAGEMENT LIMITED, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | Attorneys' Fees and Costs; Uniform Relocation Assistance and Real |
| v. | ) ) | Property Acquisition Policies Act of 1970 ("URA"), 42 U.S.C. § 4654(c); |
| THE UNITED STATES, | ) ) | RCFC 54(d) |
| Defendant. | ) ) | |

*Lars H. Liebeler*, Washington, DC, for plaintiffs.

*Robert C. Bigler*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were *Franklin E. White, Jr.*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Acting Assistant Attorney General, for defendant.

**MEMORANDUM OPINION GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

Pending before the court is plaintiff Capital Lease Limited's ("Capital") motion for attorneys' fees and costs pursuant to Rule 54(d) of the Rules of the United States Court of Federal Claims ("RCFC") and the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("URA"), 42 U.S.C. § 4654(c). ECF No. 188 (filed Nov. 30, 2016); ECF No. 189 (filed Dec. 9, 2016). In total, Capital argues that it is entitled to an award of approximately $1.25 million in fees and costs for around 2,000 hours of work on this case.

Defendant the United States ("the government") acknowledges that Capital is entitled to reimbursement of reasonable attorneys' fees and costs that it actually incurred in successfully advancing its takings claims against the United States. However, the government argues that Capital's proposed fee award should be reduced on the grounds that Capital has not shown that its proposed hourly rate is reasonable. In addition, the government asserts that Capital has claimed attorneys' fees for hours that Capital's

counsel spent on work for other, unsuccessful plaintiffs in this litigation and on legal work that was unnecessary or did not result in Capital receiving any relief. Finally, the government objects to legal research costs that the government asserts are not sufficiently documented.

This litigation began in 2008 when plaintiffs CAI International, Inc. ("CAI"), Cronos Containers Limited ("Cronos"), and Textainer Equipment Management (U.S.) Limited ("Textainer") (a company that managed shipping containers owned by Capital at the time of the taking) filed suit against the United States claiming that the government had taken title to their shipping containers without paying just compensation. The plaintiffs alleged that they each leased containers to a third party, TOPtainer Inc. ("TOPtainer"), which in turn leased the containers to the United States Army ("the Army"). Under the terms of the lease between the United States and TOPtainer, the government would take title to containers that were "lost" or "deemed lost" at the end of the lease. At the end of the lease, the government paid TOPtainer for approximately 1,000 containers that were either lost or deemed lost. TOPtainer did not, however, pass on those payments to the plaintiffs. After TOPtainer went out of business the plaintiffs sued the United States for just compensation.

In November 2012, after several rounds of briefing and rulings on motions for partial summary judgment, the court determined that CAI and Cronos had failed to establish takings claims but that Capital had a potential takings claim. *Textainer Equip. Mgmt. Ltd. v. United States*, No. 08-610C, 2012 WL 5465983 (Fed. Cl. Nov. 6, 2012); *see also Textainer Equip. Mgmt. Ltd. v. United States*, No. 08-610C, 2013 WL 1984382 (Fed. Cl. May 15, 2013) (granting plaintiffs' motion to join Capital as the real party in interest). The court found that the Army's decision to take title and possession of Capital's containers after the Army had been told that TOPtainer was in default of its contract and that TOPtainer did not have the authority to transfer title to the United States could give rise to a takings claim under the Fifth Amendment.[1] The court denied CAI's and Cronos's takings claims on the ground that CAI and Cronos had not notified the Army that TOPtainer was in default of their contracts and thus when the government exercised its contractual rights at the end of the lease with TOPtainer to take possession of their containers, the government obtained good title to their containers as a bona fide purchaser for value.

In order to resolve Capital's takings claim the court ordered additional discovery regarding the ownership and number of Capital containers. At the conclusion of discovery, there was another round of briefing and eventually the court concluded that the government was liable for taking 258 containers owned by Capital. *Textainer Equip.*

---

[1] During discovery the parties learned that 122 of Capital's containers were being used by the United States Marine Corps in Okinawa, Japan. *Textainer Equip. Mgmt. Ltd. v. United States*, 99 Fed. Cl. 211, 216 (2011).

*Mgmt. Ltd. v. United States*, 115 Fed. Cl. 708, 717-18 (2014). The court held that Capital lacked standing to pursue a takings claim with respect to containers it did not own and rejected plaintiffs' request to allow another company, Capital Lease GmbH, the alleged owner of the additional containers, to join the action as a plaintiff. *Id.* at 712-17.

The plaintiffs filed a motion for reconsideration regarding the court's decision not to allow Capital Lease GmbH to join the litigation. The plaintiffs also filed a motion for reconsideration with respect to CAI's takings claim, arguing that the containers were not lost and, as a result, the Army could not legally purchase the containers from TOPtainer. Following briefing, the court denied both of the motions for reconsideration. *Textainer Equip. Mgmt. Ltd. v. United States*, No. 08-610C, 2014 WL 2938452 (Fed. Cl. June 30, 2014).

On June 30, 2014, the court entered judgment for Capital on its takings claim in the amount of $485,899.64, which was approximately half of its original claim of $893,955.90. ECF No. 177.[2] The court entered judgment for the government with respect to the claims brought by CAI and Cronos. *Id.*

On November 30, 2016, Capital filed its application for attorneys' fees and costs under the URA. ECF No. 188. The URA provides that a plaintiff that is awarded compensation for a taking of property by the federal government may be awarded "such sum as will in the opinion of the court . . . reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding." 42 U.S.C. § 4654(c). Capital filed its application with this court's permission after all appeals were resolved in *Biery v. United States*, 818 F.3d 704 (Fed. Cir. 2016), a case also involving URA fees and costs.

In its initial application for attorneys' fees and costs, Capital sought attorneys' fees of $1,247,373.38 for 1,995.00 hours of attorney and paralegal work. Capital arrived at this amount using the lodestar method and applying the fees listed in the LSI Laffey Matrix or Kavanaugh Matrix for the 9 attorneys who worked on the case. In its initial application, Capital also sought expenses of $18,884.89. On December 9, 2016, Capital filed an amended application reducing the expenses claimed to $11,930.93 on the grounds that under the cost sharing arrangement in plaintiffs' "Legal Representation Agreement," Capital was responsible for 60% of the expenses with the remaining 40% the responsibility of unsuccessful plaintiffs CAI and Cronos. ECF No. 189.

The government argues that because plaintiffs' counsel does not have a standard hourly billing rate and because the case was not complex, the court should not apply the

---

[2] Capital was also awarded $238,461.62 in interest through May 15, 2014 for a total award of $724,361.26. ECF No. 177.

3

LSI Laffey Matrix but should instead apply a reduced version of the lower rates set forth in the adjusted Laffey Matrix. The government argues that 75% of the adjusted Laffey Matrix is appropriate based on the fee rates of plaintiffs' lead counsel in other cases. The government further argues that the court must reduce Capital's claimed hours to account for plaintiffs' counsel's work for non-successful plaintiffs and work on unsuccessful motions. In particular, the government urges the court to reduce Capital's claimed hours before November 2012 by 40%, or 468 hours, to match the allocation used to account for litigation expenses among the three parties in the case. Finally, the government argues for a reduction of $3,000 in on-line research expenses on the grounds that the cost is not adequately documented. In total, the government would reduce Capital's award to $370,420.25 in fees and $9,051.66 in costs. Def.'s Sur-Reply 10 (ECF No. 194-1).

In response to the government's arguments, Capital asserts with regard to rates that the government cannot justify a rejection of the LSI Laffey matrix rates because use of that matrix was approved by the Federal Circuit in *Biery*, 818 F.3d at 713-14, as an appropriate "starting point" in URA cases. Capital also argues that all of the hours expended, but for 13.55 hours which are attributable solely to CAI and did not contribute to Capital's award, should be accepted. Capital further argues that a 40% reduction in hours based on the cost-sharing provisions of counsel's retainer agreement is unsupported on the grounds that the cost-sharing agreement did not address attorneys' fees and a 40% reduction is not supported. Capital contends that the court cannot simply reduce fees based on a ratio without a rational basis. Capital contends that except for the hours identified above, all of the time claimed was for time spent on litigating issues applicable to Capital. Capital notes that the government logged significantly more hours than the hours logged by plaintiffs' attorneys (3,000 hours versus 2,000 hours) to show that the hours spent by plaintiffs' counsel were reasonable. Pls.' Sur-Reply 11. In addition, Capital argues that amount of claimed costs for research time has been justified in the sworn affidavit filed in support of costs. Capital also argues that it is entitled to an additional $16,890.00 incurred for 26.25 hours spent preparing the reply brief.

For the reasons set forth below, the court finds that Capital is eligible to recover attorneys' fees and costs under the URA using the lodestar approach. The court believes that the case was sufficiently complex to warrant application of the LSI Laffey matrix as a starting point but not without reductions. The court finds that a 15% reduction in the LSI Laffey rate, to reflect rates that Capital's lead counsel has received for work on other cases, is proper. The court has considered the $510 per hour counsel charged to a nonprofit client and $700 per hour counsel received for other recent work. Aff. of Lars H. Liebeler ¶¶ 38, 43. Based on the variability in the amounts charged by lead counsel in comparably complex cases, the court finds that a 15% reduction is appropriate for lead counsel for each of the years at issue.

The court also finds that certain hours spent on work for parties that did not succeed must eliminated. The court looks first at the hours spent on work from initiation

of the case in 2008 until March 30, 2012.  During this period, Capital's attorneys logged 1,156.96 hours for work related primarily to briefing on the right to recover under the Fifth Amendment.  Pls.' Sur-Reply 9.  The government objects to 23 hours that the government argues were spent in depositions defending Textainer even though Textainer was not the correct entity.  Def.'s Resp. 19.  The court finds that these hours were reasonable and need not be reduced because the arguments were not focused on individual companies but instead were focused on whether plaintiffs could make a Fifth Amendment takings claim with regard to any of the containers TOPtainer leased to the Army.  *See Textainer Equip. Mgmt. Ltd. v. United States*, 99 Fed. Cl. 211, 216 (2011); *see also Textainer Equip. Mgmt. Ltd. v. United States*, 105 Fed. Cl. 69, 71 (2012) (noting that the government's March 30, 2012 cross-motion for summary judgment presented a challenge to plaintiffs' property interests in their containers).  However, the court agrees with the government that Capital's requested hours must be reduced for time spent on unsuccessful motions which did not contribute to Capital's ultimate success, including 112.35 hours on the unsuccessful motion for leave to amend the complaint to add an implied contract claim, 50.9 hours on the unsuccessful motion for sanctions, and 17.25 hours on the unsuccessful motion to strike.  Def.'s Resp. 20-21.

Next, Capital's attorneys logged 243.05 hours from March 30, 2012 to November 6, 2012 in briefing associated with the factual issue of whether each plaintiff had given notice to the Army in order to support its taking claim.  Pls.' Sur-Reply 10.  The government objects to the reasonableness of 126 hours that were spent joining Green Eagle Investments N.V. ("Green Eagle") to the litigation and proposes a 40% reduction of the remaining requested hours during the period up to November 2012 on the grounds that this time was spent asserting CAI's and Cronos's unsuccessful claims.  Def.'s Resp. 19.  The court agrees with the government that the time spent defending Green Eagle's ownership interest in Capital's containers was not justified.  It was up to plaintiffs to solve the ownership question and not the government.  Therefore, the 126 hours spent filing briefs joining Green Eagle, which was not the owner of Capital's containers, must be eliminated.  Similarly, the time spent asserting CAI's and Cronos's claims must be eliminated.  "There is no dispute that work done on behalf of the unsuccessful plaintiffs is not recoverable."  *Biery*, 818 F.3d at 712.  While it may be difficult to separate out hour reductions "[w]hen multiple claims are brought in a single litigation and involve common questions of law," *id.*, here the court finds it can make that adjustment.  Capital suggests in its supplemental brief that a reduction of 48.61 hours (20% of the 243.05 hours requested) might be appropriate based on the percentage of briefing dedicated to CAI and Cronos issues.  Pls.' Sur-Reply 10.  The court finds that reduction is appropriate.

Next, the court turns to whether there should be a reduction in hours based on the fact that Capital received compensation for only 258 of the 477 containers it initially claimed were taken.  The court is mindful that in reducing fees the court should not engage in a mechanical exercise and thus rejects a straight percentage reduction.  *See Hensley v. Eckerhart*, 461 U.S. 424, 438 (1983).  However, in this case Capital seeks to

5

recover fees for time spent unsuccessfully attempting to bring P & R Equipment and Finance Corporation ("P & R") and Capital Lease GmbH into the litigation after plaintiffs were given more than adequate time to find the rightful owner of the containers. The court agrees with the government that the approximately 16.45 hours spent on the unsuccessful motion for reconsideration of the court's decision rejecting Capital Lease GmbH's efforts to join the litigation; 7.5 hours spent researching how to join P & R; and 7 hours spent on other research related to Capital Lease GmbH must be eliminated. Def.'s Resp. 20, 22.  In addition, the court agrees with the government that the 40 hours spent on the unsuccessful motion for a protective order is not recoverable.  *Id.* at 21-22.

Finally, the court finds that Capital is entitled to reimbursement of costs, including research costs, consistent with its amended petition.  The court finds that the research costs were justified and thus Capital is entitled to recover $11,930.93 in costs under the URA.

For the reasons above, Capital's motion for attorneys' fees and costs under the URA is **GRANTED-IN-PART** and **DENIED-IN-PART**.  The parties shall have until **May 12, 2017** to file a proposed final judgment based upon a revised calculation of attorneys' fees and costs consistent with the reductions discussed above.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge